UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. BELL,<br>         Petitioner,<br>v.<br>RONALD DAVIS, Warden of San Quentin State Prison<br>         Respondent. | Case No.: 17cv1051 WQH (JLB)<br><br>**DEATH PENALTY CASE**<br><br>**ORDER ON EXHAUSTION STATUS OF CLAIMS IN PETITION; GRANTING PETITIONER'S MOTION FOR STAY AND ABEYANCE [ECF No. 21]; AND SETTING DEADLINES** |

On August 8, 2018, pursuant to the Court's September 18, 2017 Order, the parties filed a Joint Statement Regarding Exhaustion. (ECF No. 20.) In the statement, the parties agree on the exhaustion status of all claims in the federal Petition except for one claim Petitioner argues should be deemed exhausted, which is addressed below. On September 7, 2018, Petitioner filed a Motion for Stay and Abeyance. (ECF No. 21.) On September 19, 2018, Respondent filed an Opposition, and on September 28, 2018, Petitioner filed a Reply. (ECF Nos. 22-23.) The Court finds that the matters at issue here are suitable for decision without oral argument.

///

///

1

For the reasons discussed below, the Court **FINDS** that Claim Six of Section VI of the federal Petition is unexhausted, **GRANTS** Petitioner's motion to stay the instant federal case pending the exhaustion of state remedies, and sets deadlines as outlined below.

## I. PROCEDURAL HISTORY

In an Information filed August 12, 1992, Petitioner was charged with first degree murder in the death of Johnny Anderson in violation of California Penal Code § 187(a), first degree robbery in violation of Cal. Penal Code §§ 211 and 212.5(a), and residential burglary in violation of Cal. Penal Code §§ 459 and 460. (CT 15-16.) The Information also charged that Petitioner used a deadly and dangerous weapon in the commission of each of the three counts within the meaning of Cal. Penal Code § 12022(b) and had inflicted great bodily injury on Anderson in the commission of the robbery and burglary, within the meaning of Cal. Penal Code § 12022.7. (CT 15-17.) Petitioner was also charged with the special circumstances of murder in the commission of a robbery and murder in the commission of a burglary under Cal. Penal Code § 190.2(a)(17). (CT 16.) Prior to trial, the California Court of Appeal granted a petition for a writ of prohibition to set aside the portions of the Information charging Petitioner with residential burglary and the special circumstance of murder in the course of a burglary. (CT 980-85.)

On November 22, 1993, after the guilt phase proceedings and deliberations, the jury found Petitioner guilty of first degree murder and first degree robbery, found that Petitioner used a deadly and dangerous weapon in both the murder and robbery, and found that Petitioner inflicted great bodily injury on Anderson in the commission of the robbery. (CT 1835-36, 1838-39.) The jury also found true the special circumstance of murder in the course of a robbery. (CT 1837.) On December 17, 1993, after penalty phase proceedings and deliberations, the jury returned a verdict of death. (CT 1865.) On March 4, 1994, Petitioner was sentenced to death. (CT 1879-81.)

On direct appeal of his conviction and judgment to the California Supreme Court, Petitioner filed an opening brief on June 12, 2003. (Lodgment No. 4.) Petitioner filed a reply brief on January 28, 2005. (Lodgment No. 6.) Petitioner also filed a supplemental

2

letter brief and response to Respondent's letter brief on September 25, 2006 and October 13, 2006, respectively. (Lodgment Nos. 7, 9.) The California Supreme Court affirmed Petitioner's conviction and sentence in a written decision issued on February 15, 2007. People v. Bell, 40 Cal. 4th 582 (2007), disapproved of by People v. Sanchez, 63 Cal. 4th 665 (2016). The United States Supreme Court denied the petition for a writ of certiorari on October 1, 2007. Bell v. California, 552 U.S. 826 (2007).

On March 29, 2007, Petitioner filed a habeas petition with the California Supreme Court. (Lodgment No. 17.) On June 22, 2009, Petitioner filed an amended petition. (Lodgment No. 18.) On September 28, 2010, Petitioner filed a reply. (Lodgment No. 20.) On January 21, 2014, the California Supreme Court issued an Order to Show Cause. (Lodgment No. 21.) On May 14, 2014, Respondent filed a Return and on September 25, 2014, Petitioner filed a Traverse. (Lodgment Nos. 22-23.) On November 12, 2014, the California Supreme Court ordered an evidentiary hearing. (Lodgment No. 24.) After holding an evidentiary hearing, the Referee issued a Report on March 21, 2016. (Lodgment No. 26.) After filings including Petitioner's exceptions to the Referee's Report, Respondent's response and Petitioner's reply (Lodgment Nos. 27-29), the California Supreme Court issued an opinion discharging the Order to Show Cause on June 8, 2017. (Lodgment No. 30.) On July 26, 2017, the California Supreme Court denied the remaining claims in the habeas petition. (Lodgment No. 31.)

On August 1, 2017, the Court issued an Order appointing counsel to represent Petitioner in the instant proceedings. (ECF No. 5.) On September 13, 2017, pursuant to the Court's direction, the parties filed a joint statement on a proposed schedule for lodging the state record, filing the petition, and for any proceedings on exhaustion and/or stay and abeyance. (ECF No. 10.) Thereafter, the Court issued a scheduling order setting out deadlines for lodging the record, filing the petition, filing a joint statement on exhaustion and filings on any request for stay and abeyance. (ECF No. 11.)

On July 25, 2018, Petitioner filed a Petition for Writ of Habeas Corpus. (ECF No. 18.) On August 8, 2018, Petitioner and Respondent filed a Joint Statement Regarding

Exhaustion. (ECF No. 20.) On September 7, 2018, Petitioner filed a Motion for Stay and Abeyance, along with a Memorandum of Points and Authorities in Support of the Motion, and the declaration of prior counsel as Exhibit A. (ECF No. 21.) On September 19, 2018, Respondent filed an Opposition and on September 28, 2018, Petitioner filed a Reply. (ECF Nos. 22-23.)

## II. DISCUSSION

A.  Exhaustion

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275 (1971); see also 28 U.S.C. § 2254(b),(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard, 404 U.S. at 275. "In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir. 2013), quoting Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009).

In the joint statement, the parties agree on the exhaustion status of all but one of the claims raised in the federal petition. The parties state that "all of the claims contained in Sections IV and V of the petition are exhausted" and that "the claims contained in Sections VI and VII of the petition are unexhausted, although petitioner maintains that Claim Six of Section VI should be deemed exhausted and that the exhaustion issue may be clarified by the pending *en banc* decision in *Andrews v. Davis*, 866 F.3d 994 (9th Cir. 2017), *reh'g granted*, 888 F.3d 1020 (9th Cir. 2018), set for oral argument in September 2018." (ECF No. 20 at 1-2.) In the Memorandum of Points and Authorities in Support of the Motion for Stay and Abeyance, Petitioner repeats his assertion that Claim Six of Section VI is exhausted and states that "[s]ection VII of the § 2254 petition raises a cumulative error claim as to all of the claims in the petition, and therefore it is unexhausted to the extent that it includes prejudice flowing from the unexhausted claims." (ECF No. 21-1 at 2.)

4

Claim Six in Section VI of the federal Petition is entitled "The Systemic Dysfunction Of California's Death Penalty Regime Leads To Consequences, Including Delay In Imposition Of The Penalty, That Render Imposition Of That Penalty Unconstitutional," and in the text of that claim Petitioner acknowledges he raised a claim in the state habeas petition under Lackey v. Texas, 514 U.S. 1045 (1995) (mem.) (Stevens, J., respecting the denial of certiorari). (ECF No. 18 at 316.) Lackey "raise[d] the question whether executing a prisoner who has already spent some 17 years on death row violates the Eighth Amendment's prohibition against cruel and unusual punishment." Lackey, 514 U.S. at 1045. Petitioner's claim raised on state habeas was entitled "Execution Following A Long Period Of Confinement Under A Sentence of Death Would Violate Mr. Bell's Right To Be Free From Cruel, Torturous, And Unusual Punishment." (Lodgment No. 18 at 239.) With respect to that previously raised claim, Petitioner asserts he "has repeated that claim in this petition," and "requests that the Court take judicial notice of the facts stated in District Judge Carney's *Jones* opinion." (ECF No. 18 at 316, citing Jones v. Chappell, 31 F. Supp. 3d 1050 (C.D. Cal. 2014), reversed by Jones v. Davis, 806 F.3d 538 (9th Cir. 2015).)

As noted in the Ninth Circuit's decision in Jones v. Davis, the original claim raised in that proceeding was "the same Lackey claim that the state court had rejected, arguing that the 'excessive delay' after his sentencing violates the Eighth Amendment." Jones, 806 F.3d at 542. Then, after "the district court issued an order expressing the view that California's post-conviction system itself may be unconstitutional," and ordered the filing of an amended petition and additional briefing, the amended claim "alleged that California's post-conviction system itself violates the Eighth Amendment by creating excessive delay between sentencing and execution in capital cases generally." Id.

In the federal Petition filed in this case, Petitioner notes "[t]here is 'tension' in Ninth Circuit case law regarding whether exhaustion of a *Lackey* claim, should Mr. Bell's claim be characterized as limited to a *Lackey* claim, also serves to exhaust a *Jones* claim," and posits that the issue may be decided by the en banc Ninth Circuit in Andrews. (ECF No. 18 at 316-17, citing Rowland v. Chappell, 876 F.3d 1174, 1194 n. 7 (9th Cir. 2017) and

Andrews, 866 F.3d 994, rehearing granted, 888 F.3d 1020). Indeed, the Ninth Circuit has acknowledged that:

> There may be some tension in our case law regarding whether exhaustion of a *Lackey* claim- which asserts that delay in a defendant's individual case between judgment and execution constitutes an Eighth Amendment violation, *see Lackey v. Texas*, 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1997) (Stevens, J., mem. op. respecting denial of cert.)- also serves to exhaust a *Jones* claim. *Compare Alfaro*, 862 F.3d at 1184 ("The key distinguishing factor between *Lackey* and *Jones* claims is that the latter concern *systemic* delay that creates arbitrariness in executions.") *and Jones*, 806 F.3d at 554 (Watford, J., concurring) ("Presenting the *Lackey* claim to the California Supreme Court . . . did not satisfy the exhaustion requirement.") *with Andrews v. Davis*, 866 F.3d 994, 1039 (9th Cir. 2017) (holding that the petitioner's reference to *Jones* on appeal did not fundamentally alter his *Lackey* claim, and therefore exhaustion of his *Lackey* claim 'likewise exhausted his current challenge.')

Rowland, 876 F.3d at 1194 n.7.

Petitioner contends that "Mr. Bell's *Lackey* claim in the state habeas corpus petition challenged the systemic delay in the administration of California's death penalty, and therefore, he asserts, the *Jones* claim is exhausted." (ECF No. 18 at 316.) Yet Petitioner's claim appears centered on delays specific to his own case, rather than presenting any systemic challenge. In the state habeas petition, Petitioner contended that his "sentence of death and continued confinement are unlawful and unconstitutional," citing the state and federal Constitutions, statutes, international and decisional law and numerous other rules and authorities, "because the California death penalty appellate and post-conviction procedures fail to provide Mr. Bell with a constitutionally full, fair, and timely review of his conviction and sentence." (Lodgment No. 18 at 239.) Petitioner argued that the "[e]xecution of Mr. Bell following such confinement under a sentence of death for this lengthy period of time would constitute cruel and unusual punishment because the State's ability to exact retribution and to deter other serious offenses by actually carrying out such a sentence is drastically diminished, such that this extraordinary sentence does not serve

any legitimate state interest." (Id. at 242.) The claim raised in state court clearly appears to be a Lackey claim alone.

In the federal Petition, Petitioner contends that "[t]o the extent that Mr. Bell's claim is characterized as limited to a *Lackey* claim, he contends that this Court should stay the exhaustion and stay-and-abey decisions pending *Andrews*." (ECF No. 18 at 317.) Petitioner does not appear to reiterate this request in the instant motion. To the extent Petitioner requests a stay of the Court's decision on the instant matters, the Court finds that course of action unnecessary. The parties agree that there are several unexhausted claims, as well as exhausted claims, in the instant Petition. Regardless of the exhaustion status of this particular claim, the stay and abeyance issue appears ripe for decision. Under current Ninth Circuit authority it appears that the Lackey claim Petitioner presented to the California Supreme Court did not exhaust the Jones/Lackey claim in the present federal Petition. The Ninth Circuit, in ordering that Andrews would be reheard en banc, also ordered that "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." Andrews v. Davis, 888 F.3d 1020 (9th Cir. 2018) (mem.). At present, circuit authority supports a conclusion that exhausting a Lackey claim is not sufficient to exhaust a Jones claim. See e.g. Alfaro v. Johnson, 862 F.3d 1176, 1180-84 (9th Cir. 2017).

Pursuant to the stipulation of the parties as outlined in the joint statement (see ECF No. 20), the Court finds that the claims in Sections VI and VII of the petition, with the exception of Claim Six of Section VI, are unexhausted, and all of the claims contained in Section IV and V of the petition are exhausted. For the reasons discussed above, the Court finds that Claim Six of Section VI is unexhausted.

B.  Stay and Abeyance

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims," in doing so "reason[ing] that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a

7

17cv1051

petitioner's claims." Rhines v. Weber, 544 U.S. 269, 273 (2005), citing Lundy, 455 U.S. at 518-19. At that time, the Supreme Court "imposed a requirement of 'total exhaustion' and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance." Id. at 274, quoting Lundy, 455 U.S. at 522. The Rhines Court noted that "[t]he enactment of AEDPA in 1996 dramatically altered the landscape for federal habeas corpus petitions," and while it "preserved Lundy's total exhaustion requirement," AEDPA "also imposed a 1-year statute of limitations on the filing of federal petitions," and "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Id. at 274-75.

The Rhines Court stated that in "limited circumstances" a procedure was available under which "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Id. at 275-77. The Rhines Court held that stay and abeyance was appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the "unexhausted claims were potentially meritorious" and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277-78.

In this case, as discussed above, the parties agree that the federal petition contains both exhausted and unexhausted claims. Accordingly, the Court finds the instant motion is amenable to analysis under Rhines.

1. Good Cause For Failure to Exhaust

Petitioner asserts that he has good cause for his failure to exhaust, arguing first that state habeas counsel was ineffective in failing to raise the unexhausted claims and that "the Ninth Circuit held that ineffective assistance of habeas counsel constitutes good cause under the first prong of the *Rhines* test." (ECF No. 21-1 at 2-3, citing Blake v. Baker, 745 F.3d 977, 980-84 (9th Cir. 2014).) Petitioner attaches a declaration from Petitioner's state

8

habeas counsel in support of his assertion. (See ECF No. 21-2.) Alternately, Petitioner argues that Claims One and Two of the unexhausted claims "demonstrate a miscarriage of justice because he is actually innocent of the capital murder allegations" and separately satisfies the good cause prong under Rhines. (ECF No. 21-1 at 4.)

As to Petitioner's first assertion of good cause, "[i]n *Blake*, [the Ninth Circuit] concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause 'was not a bare allegation of state postconviction (ineffective assistance of counsel), but a concrete and reasonable excuse, supported by evidence.'" Dixon v. Baker, 847 F.3d 714, 721 (9th Cir. 2017), quoting Blake, 745 F.3d at 983. The Ninth Circuit stated that "the Rhines standard for IAC-based cause is not any more demanding than the cause standard articulated in Martinez [v. Ryan, 566 U.S. 1, 132 S.Ct. 1309 (2012)]." Blake, 745 F.3d at 984; see Martinez, 566 U.S. at 14 ("[A] prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."); see also Detrich v. Ryan, 740 F.3d 1237, 1245-26 (9th Cir. 2013) (en banc) (plurality opinion) ("We conclude, for the narrow purpose of satisfying the second Martinez requirement to establish 'cause,' that a prisoner need only show that his PCR counsel performed in a deficient manner. A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above the required showing that the trial-counsel IAC claim be 'substantial' under the first Martinez requirement.")

With respect to the first five unexhausted claims, Claims One through Five in Section VI of the federal Petition, state habeas counsel's declaration states that: "I and my team did not raise Claims One-Five listed in the preceding paragraph because we did not identify the legal grounds or evidence for presenting them. In other words, we did not spot the issues. We did not make a considered tactical decision to omit those claims from Mr. Bell's state habeas corpus petition. Had we identified the legal bases and evidence

9

supporting these claims, we would have raised them." (ECF No. 21-2 at 3.) With respect to Claim Six, which presents the Lackey/Jones claim discussed above, counsel states a belief that the claim was presented to the state court, and that: "[t]o the extent that the Court believes that the state habeas pleadings did not sufficiently raise a claim under *Jones*, it was a mistaken omission on our part and not the result of a tactical decision." (Id.) With respect to the claim of cumulative error, prior counsel notes that state habeas petition raised a cumulative error claim and that "[w]e did not raise the prejudice flowing from the claims in Section VI because, as discussed above, we did not identify those claims. Had we identified the claims in Section VI, we would have included the prejudice flowing from those claims in the cumulative error claim that we did raise. We did not make a considered tactical decision to omit the prejudice flowing from the claims in Section VI from the cumulative error claim that we did raise." (Id.)

Respondent maintains that Petitioner's argument and the declaration of prior habeas counsel is insufficient to demonstrate good cause, citing the lack of "new evidence" supporting the unexhausted claims and the failure to identify actions by prior counsel that demonstrate a reasonable excuse for failing to exhaust those claims. (ECF No. 22 at 11.) Respondent also argues that counsel's declaration is vague, "equally susceptible to the interpretation that [counsel] did not 'identify the legal grounds or evidence' for presenting these claims because the claims were not supportable," and fails to demonstrate counsel was ineffective. (Id. at 12.)

With respect to these contentions, the Court finds that most of the unexhausted claims were of the type apparent from the trial and appellate record and did not appear to require additional evidentiary support to plead, and that prior counsel's declaration is not vague in stating that had the claims been identified, they would have been raised. Upon review, the Court concludes that Petitioner has made a sufficient showing that post-conviction counsel may be deficient under Strickland. Petitioner's allegations of ineffective assistance of counsel are sufficient to demonstrate good cause for his failure to exhaust the noted claims in state court. See Dixon, 847 F.3d at 721; Blake, 745 F.3d at

983-84. Because Petitioner has demonstrated good cause on this basis, it is unnecessary to address his contention that he can also demonstrate good cause for failing to raise Claims One and Two under a showing of miscarriage of justice/actual innocence.

2. Merit of Unexhausted Claims

"[E]ven if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277. "In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" Dixon, 847 F.3d at 722, quoting Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). Upon review, the Court is unable to conclude that each of Petitioner's unexhausted claims are "plainly meritless." See Dixon, 847 F.3d at 722 ("A federal habeas petitioner must establish that at least one of his unexhausted claims is not 'plainly meritless' in order to obtain a stay under Rhines."), quoting Rhines, 544 U.S. at 277.

For instance, in Claim Three of Section VI of the federal Petition, Petitioner alleges prosecutorial misconduct during penalty phase arguments and ineffective assistance of trial and appellate counsel in failing to challenge the asserted misconduct. (ECF No. 18 at 302.) Petitioner alleges that the misconduct included an "emotional plea to vengeance" that Petitioner should be shown the "same mercy" as the victim, the victim's mother, and the victim of Petitioner's prior crime. (Id. at 303, quoting RT 4428.) Petitioner also argues that the prosecutor "compared the fate of the victim to life imprisonment," referencing privileges Petitioner would receive in prison, and called Petitioner "evil" and a "creature." (Id. at 303-04, citing RT 4422, 4429, 4433.) Petitioner also asserts the prosecutor committed misconduct in "argu[ing] that religious and biblical authority supported the death penalty" and making societal and community based arguments for the death penalty. (Id. at 305-07, citing RT 4430-34.)

The Supreme Court has held that prosecutorial misconduct in arguments to the jury may state a claim of constitutional error. Darden v. Wainwright, 477 U.S. 168, 181 (1986)

11

("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Comments similar to the type identified in this claim have been found to constitute misconduct. See e.g. Darden, 477 U.S. at 180 nn. 11-12 (comments found "improper" included referring to the perpetrator as an "animal" and stating that "[h]e shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash"); Sandoval v. Calderon, 241 F.3d 765, 777 (9th Cir. 2000) (noting that "religious arguments have been condemned by virtually every federal and state court to consider their challenge") (collecting cases); Trilo v. Biter, 769 F.3d 995, 1001 (9th Cir. 2014) ("As we have recognized, '(a) prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.'"), quoting United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005). In light of the cited comments and the relevant authority, it possible that Petitioner could show a due process violation as a result of the alleged misconduct, and the Court cannot conclude "'it is perfectly clear that the petitioner has no hope of prevailing.'" Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624.

The remainder of the unexhausted claims raise challenges that concern the sufficiency of the evidence concerning the robbery (Claim One), the use of juvenile conduct in aggravation at the penalty phase proceedings (Claim Two), the use of statements made to a probation officer concerning lack of remorse (Claim Four), the admission of evidence of jail misconduct in penalty phase rebuttal (Claim Five), the asserted dysfunction in the California capital system (Claim Six), and a claim of cumulative error (Section VII). (ECF No. 18 at 293-317.) In view of the arguments and authority presented, and given in particular that murder in the course of a robbery was the sole special circumstance considered by the jury and the true finding resulted in Petitioner's eligibility for the death penalty, as well as that the prior juvenile conduct was a significant part of the prosecution's penalty phase presentation in aggravation, the Court is unable to conclude those claims are "plainly meritless."

### 3. Dilatory tactics

The Rhines Court recognized that "[i]n particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death," and held that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." Id., 544 U.S. at 277-78. At the same time, the Supreme Court noted that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

Petitioner states he "timely filed his federal petition and has generally proceeded in a timely manner throughout the history of this case," and "is unaware of any claims that he has engaged in abusive litigation tactics that would justify a denial of this motion." (ECF No. 21-1 at 6.) Respondent, however, contends that "Bell has also been dilatory in presenting his unexhausted claims" and notes that "this Court appointed current federal habeas counsel on August 1, 2017, over fourteen months ago." (ECF No. 22 at 17-18.) Respondent argues: "Bell has yet to file his exhaustion petition in a California state court. Instead, he is content to wait until this Court rules on the stay request and gives him further direction on when such a petition should be filed. There is absolutely no provision under California law requiring Bell to obtain permission, much less a stay, from this Court or any other federal court before filing a state habeas petition in the California courts." (Id.)

While the record indeed reflects that counsel was appointed in August 2017, the federal Petition was filed in July 2018, and Petitioner does not indicate that he has yet filed an exhaustion petition in state court, the Court does not find that this constitutes evidence of dilatory tactics. Petitioner points out that in the September 13, 2017 joint statement, the parties agreed on the filing date for the petition, and also agreed that if a stay was granted, "'Petitioner shall have 30 days to commence litigation of any unexhausted claims in state court.'" (ECF No. 23 at 7, quoting ECF No. 10.) A review of that joint statement confirms

13

that the parties indeed agreed to that proposed procedure in the event a stay was granted. (See ECF No. 10 at 2.) Moreover, Petitioner argued in the federal Petition, as well as in the instant motion, that Claim Six should be deemed exhausted. (See ECF No. 18 at 316-17, ECF No. 21-1 at 2.) In light of the parties' prior agreement and because the Court's determination on the exhaustion issue could impact the composition of any exhaustion petition, it appears reasonable for Petitioner to have awaited a decision on the instant motion prior to filing a state exhaustion petition. Under the circumstances presented, the Court does not find evidence of abusive tactics or intentional delay.

### III. CONCLUSION

IT IS HEREBY ORDERED that the Court **FINDS** the claims in Sections VI and VII of the petition are unexhausted, and the claims contained in Section IV and V of the petition are exhausted, and **GRANTS** Petitioner's motion for stay and abeyance (ECF No. 21).

IT IS FURTHER ORDERED that Petitioner will commence exhaustion proceedings in the California Supreme Court and will file proof of that filing in this Court within 30 days of the date of this Order. Petitioner will also file a report with this Court every 90 days thereafter to inform the Court of the status of the state court proceedings. Proceedings on the federal Petition are stayed during the state court proceedings. Petitioner shall file a notice with the Court within 7 days of the state court's resolution of the state habeas petition and shall file any amended federal petition within 30 days of the state court's decision. In the event that Petitioner does not commence exhaustion proceedings in state court or file an amended petition within the time frames outlined in this Order, the stay and abeyance will be lifted, and proceedings will resume in this Court on the current federal Petition.

Dated: November 1, 2018

Hon. William Q. Hayes
United States District Court